UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| In re:<br>JUSTIN EISENART and<br>BRITTANY EISENHART,<br>Debtors. | Case No. 5:20-71965-R<br>Chapter 7<br>Hon. Bianca M. Rucker |
| In re:<br>ERIC SOLLER, | Misc. P. No. 5:21-mp-00702<br>Hon. Bianca M. Rucker |

**RESPONSE TO UST MOTION TO DISQUALIFY**

Attorney Eric Soller ("Soller" or "Counsel"), counsel to the debtors in the above-captioned chapter 7 case and the subject of the above-captioned miscellaneous proceeding gives the following response to the "United States Trustee's Response in Opposition to Amended and Restated Motion Pursuant to Local Rule 2090-1(b) for *Pro Hac Vice* Admission of Daniel E. Garrison, Esq., or, in the Alternative, Motion to Disqualify Daniel E. Garrison from Acting as Counsel in this Matter," filed in the above-referenced cases on September 13, 2021.

I. INTRODUCTION

Unbeknownst to this Court, the United States Trustee Program ("USTP")—and Mr. Cassamatta, specifically—has tried and failed before to prevent Mr. Garrison from representing attorney clients of Fresh Start Funding, LLC ("FSF") when their bifurcation practice and/or relationship with FSF has been challenged. The Motion to Disqualify filed by the USTP and Mr. Cassamatta in this case parallels a motion that was asserted and denied *twice* in a case in Missouri, under Missouri's identical rules of professional conduct. This Court should not allow the USTP to relitigate issues that it knows have no merit and should deny the Motion to Disqualify under the doctrine of issue preclusion.

But even if this Court allows the USTP to relitigate these issues, the Motion to Disqualify has no more merit than their failed attempts to disqualify Mr. Garrison in the past. The USTP seeks the extraordinary relief of disqualifying an attorney from participating in these proceedings when that attorney is not even an estate professional. Equally extraordinary is the idea that either the USTP or this Court needs to protect Mr. Soller, an experienced attorney, from potential conflicts of interest with his chosen counsel. This highly unusual request is premised on an assertion under Rule 1.7 of the Arkansas Rules of Professional Conduct ("ARPC") that Garrison cannot possibly provide adequate assistance to Soller when he also is a principal of Fresh Start Funding, the company providing Soller with defense pursuant to Soller's contract with the company.

In fact, this situation involves a quite routine example of an indemnitor providing counsel to its indemnitee, which is governed by Rule 1.8(f), which concerns counsel's duties to a client where the representation is paid by a third party. See ARPC 1.8(f). Because there is a separate, more specific rule governing this practice, this Court should conclude that it, and not the more general provisions of Rule 1.7, govern this situation. As with any insurance-defense situation, an attorney may represent a client and be paid by an indemnitor with the client's informed consent. Soller is an experienced attorney and an example of the most sophisticated type of client imaginable. As set forth below, he is aware of and exercised informed consent to the potential conflicts of interest inherent in FSF providing him counsel. Moreover, as the accompanying Declaration of Daniel E. Garrison, Esq. makes clear, this representation absolutely can be provided with an appropriate sensitivity to the ethical issues. This Court should not substitute its judgment for Soller's in his choice of counsel. The Motion to Disqualify should, therefore, be denied.

I. **FACTS**

1. Soller does not dispute the organic facts set forth in the Motion to Disqualify (e.g., documents, dates, excerpts from documents, etc.) but denies various characterizations of the USTP in the paragraphs denominated as "Facts." Soller offers the following additional facts to aid the Court in understanding the issues raised in the Motion to Disqualify.

2. Garrison (through a holding company) owns a fractional interest in FSF and is one of the company's co-founders and remains a principal and senior executive of the company. Declaration of Daniel E. Garrison, Esq. ("Garrison Dec."), ¶ 3.

3. Garrison also is a principal in Protego Law, PLLC, an Arizona-based law firm the sole purpose of which is to provide legal services to attorneys like Soller who offer bifurcated engagements to their chapter 7 clients. Garrison Dec., ¶ 5-6. The vast majority of Protego Law's clients are attorneys to whom FSF is obligated under the defense guarantee & indemnity. Id., ¶ 6.

4. Soller initially engaged Garrison and his firm on or about January 11, 2021 pursuant to a written and signed engagement letter, the purpose of which was to have Garrison respond to the USTP's initial inquiry as described in paragraph 5 of and Exhibit 1 to the Motion to Disqualify. Id., ¶ 13. Soller re-engaged Garrison and his firm on or about August 13, 2021 to respond to the Court's order and the USTP's motion filed in the above-captioned cases. Both engagement letters:

   a. Disclosed that the costs of Garrison's and his firm's services would be borne by FSF pursuant to the Defense Guaranty & Indemnity;

   b. Disclosed that Garrison and other principals of the law firm were also owners of FSF;

   c. Discussed the fact that FSF had advanced funds to Soller under the Finance Agreement and taken a lien against the fee receivable owed to Soller by his client; and,

      d. Discussed the perceived alignment of FSF's interests with Soller's in this matter but advised that if the interests diverged it could create a conflict of interest that would necessitate withdrawal of Garrison and the firm.

Id.

5. Garrison is a very experienced and qualified attorney. Id., ¶ 7. Beyond his 20+ years of bankruptcy and commercial litigation experience prior to co-founding FSF, over the last three years he has represented over 40 attorney clients of FSF in matters questioning or challenging bifurcation and/or FSF's relationship with its attorney clients. Id., ¶ 9. He also has published and spoken nationally on the topic of chapter 7 bifurcation. Id., ¶ 8.

6. With an acute sensitivity to the potential for conflicts of interest, Garrison has facilitated the resolution of dozens of these matters. The resolution of those matters has often involved agreements requiring financial contribution by FSF, changes to FSF's forms and practices, and other situations where FSF was required to make concessions in order to comply with orders or agreements, or to facilitate the development of the agreements. In those situations, Garrison had candid conversations with his attorney clients about their specific interests and then, clearly identifying the dual roles that he has as their counsel and as a principal of FSF, discussed FSF's perspectives on those same issues. This open conversation, with clear identification of roles and perspectives, has facilitated what Garrison believes to universally have been informed consent by his attorney clients in their chosen course of defense. From Garrison's perspective, this has in no small part also been facilitated by the fact that his clients are, themselves, practicing attorneys with an independent awareness of and sensitivity to conflicts of interest. In other situations, FSF's attorney clients have elected to litigate issues to a decision and, in a few instances, through to an appeal. Id., ¶ 10.

7. In very limited circumstances, Garrison has had occasion to recommend that his attorney clients seek separate representation, and he has pivoted to a consulting role in the relationship. Id., ¶ 11.

8. From Garrison's perspective, FSF's provision of counsel to the company's attorney clients is no different than insurance-defended litigation in the broader legal world, a dynamic with which he has had prior, personal experience. One significant difference is that Garrison's current clients (like Soller) are all practicing attorneys, which has made the discussion of the potentially divergent interests of FSF and its attorney clients significantly easier than a similar discussion with a non-attorney client. Id., ¶ 12.

9. Except in the situations where he has recommended separate counsel, both Garrison and his attorney clients have concluded that FSF's and the attorneys' respective interests in the representation were consistent. Both parties were interested in vindicating the practice of bifurcation and/or the commercial relationship between FSF and its attorney clients. Both parties were interested in a quick and efficient resolution of the dispute. Id.¶ 13.

10. Soller is an experienced attorney and attests by his signature below that he was and is comfortable with the disclosures described above and believes that he exercised informed consent in executing his engagement letter and continues to exercise that same informed consent as the representation has progressed.

11. On May 12, 2020, the USTP filed its "United States Trustee's Motion to Disqualify Daniel E. Garrison and Protego Law PLLC from Acting as Counsel in this Matter and to Reconsider Order Admitting Daniel E. Garrison *Pro Hac Vice*" as docket entry 67 in the chapter 7 case of In re Rosema, Case No. 20-40366, docket entry 67 (Bankr. W.D. Mo.) ("Rosema" and, its docket entries "Rosema DE ___") (the "Prior Motion to Disqualify"). The USTP acknowledges

the existence of this Missouri case as the source of certain documentation referenced in the Motion to Disqualify.

12. In the Prior Motion to Disqualify, the USTP asserted the same set of factual circumstances as are present in this case to argue under Missouri's identical version of Rule 1.8 that Garrison and his firm suffered from a disqualifying conflict of interest in representing the attorney who was FSF's client in that chapter 7 case. Notably, Daniel J. Cassamata was the Acting United States Trustee in the Missouri case, as he is in this case. See Prior Motion to Disqualify at *passim*.

13. The Missouri bankruptcy court heard oral argument on the Prior Motion to Disqualify on August 11, 2020 and denied the motion without prejudice. The USTP thereafter reasserted the motion and the matter was set for an evidentiary hearing on December 3, 2020 at which hearing Matthew Hartley testified as a representative of FSF and Protego Law. The Missouri bankruptcy again denied the Prior Motion to Disqualify, making findings on the record and reserving the right to supplement the findings and conclusions with a written order if an appeal was filed. See Rosema DE 154, 155.

14. In this case, although the USTP and Mr. Garrison had multiple discussions about the *pro hac vice* application and potential ways to avoid litigating the Motion to Disqualify, the effort ultimately was unsuccessful. In one such conversation, Mr. Garrison and the USTP's trial attorney and assistant UST discussed, alternately, having Garrison and Soller consent to the USTP contacting Soller despite his represented status, *or* revising the *pro hac vice* motion to request under the local rule that Garrison be granted admission without the necessity of local counsel (obviating the USTP's McDade Act concern about the dilemma created by Soller being both a represented party *and* local counsel to Garrison). Ultimately, Soller filed an amended version of

the *pro hac vice* motion that, among other things, requested that Garrison be admitted without the need for separate local counsel—in part because Soller is separately receiving notice of and is obligated to attend and participate in events surrounding the disputes in this case as debtor's counsel. Garrison Dec., ¶ 15.

II. **LEGAL ARGUMENT**

A. **The Motion to Disqualify Should Be Denied Under the Principle of Issue Preclusion**

Especially because the Motion to Disqualify lacks any legal merit (as discussed *infra*), the relitigation of Garrison's proposed disqualification is inefficient and inappropriate. Perhaps the USTP wants the tactical advantage of disqualifying an attorney who has spoken on, written about and litigated the issues raised in this matter multiple times across the country. Perhaps they want to increase the cost of FSF honoring its defense guaranty and indemnity by forcing it to hire and pay for separate counsel for its attorney clients. Regardless of the motivation, the USTP should not be allowed to relitigate issues in different districts when those issues already have been decided against them.

This Court should deny the Motion to Disqualify under the doctrine of issue preclusion.

> Under issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, "the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982); see also Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir.1996). Issue preclusion will also bar relitigation of an issue by one who, although not a party to the original suit, is in privity with a party to that suit. See Oldham v. Pritchett, 599 F.2d 274, 276 n. 1 (8th Cir.1979).

Tyus v. Schoemehl, 93 F.3d 449, 453 (8th Cir. 1996). Explaining the basis for the doctrine, the Tyus court went on to note that:

> Preclusion is rooted in concerns of judicial economy. As we have noted, "[i]n this era of overcrowded dockets the courts have a

>positive duty to restrict needless relitigation of issues." Gerrard v. Larsen, 517 F.2d 1127, 1134 (8th Cir.1975); see also Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (preclusion doctrines "conserve[] judicial resources"). Additionally, the preclusion doctrines protect defendants, by relieving them of "the expense and vexation attending multiple lawsuits." United States v. Gurley, 43 F.3d 1188, 1197 (8th Cir.1994) (quoting Montana, 440 U.S. at 153, 99 S.Ct. at 973), cert. denied, ___ U.S. ___, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995).

Id. at 453-54.

Here, the USTP previously litigated the very issues raised in the Motion to Disqualify—twice—and lost. And it is not substantively different that the Prior Motion to Disqualify argued that various provisions of Rule 1.8 precluded Garrison's representation, while the current Motion to Disqualify focuses on supposed conflicts of interest under Rule 1.7. As explained below, these Rules are linked and deal with the same basic issue—conflicts of interest. Moreover, the substance of the argument is the same: that because Garrison is an owner of FSF, there is a disqualifying conflict of interest in him representing FSF's attorney client on issues relating to FSF. Under both motions, the operative question could be phrased as "because Garrison owns FSF, and FSF has a financial interest in the outcome of the dispute before the court, is Garrison precluded from representing FSF's attorney client?" Despite the knowledge that their arguments are legally and factually incorrect, they reassert them here hoping for an inappropriate "second bite at the apple." This Court should summarily deny the Motion to Disqualify and allow Soller to work with his chosen counsel, moving on to the substance of the dispute before the Court.

### B. The Motion to Disqualify Requests Extraordinary Relief that this Court Should Rarely Consider Granting

This is not a situation subject to the "disinterestedness" standard of the Code that is applicable to estate professionals. In such situations, the Court has an understandably direct interest in vetting actual and potential conflicts of those who will represent the interests of the bankruptcy

estate and its official constituencies.[1] Here, in stark contrast, the Court is being asked to intrude on the private relationship of an attorney with his chosen counsel. Examined in its true context, this is an extraordinary request.

Such requests are "subject to 'particularly strict judicial scrutiny' because they may be abused by opposing counsel." Midwest Motor Sports v. Arctic Cat Sales, Inc., 347 F.3d 693, 700-701 (8th Cir. 2003) (further citation and footnote omitted)). "Disqualification is an extreme remedy which should be imposed only when absolutely necessary," Id. (citing Macheca Transp. CO. v. Phila. Indemn. Co., 463 F.3d 827, 833 (8th Cir. 2006)).

### C. The Motion to Disqualify Is Predicated on a General Provision of the ARPC and There Is a More Specific Provision that Allows the Type of Indemnified Defense Present Here

While Rule 1.7 clearly applies to every attorney-client relationship, the ARPC has a more specific provision that is directly applicable to and allows the type of insurance defense relationship present here. It is a generally accepted principle of statutory construction that the "specific governs the general" or, in other words, where there is a specific provision that deals with a subject the specific provision must be applied even when a more general (but still arguably applicable) provision would generate a different result. See, e.g., Elwood v. Jeter, 386 F.3d 842, 846 (8th Cir. 2004) (quoting Varity Corp. v. Howe, 516 U.S. 489, 511 (1996)). Hence, while the general rules of conflict of interest (notably, Rule 1.7) apply to every attorney-client relationship, this Court should look first to the more specific provisions of Rule 1.8(f) to evaluate whether

---

[1] Chapter 7 debtors' attorneys are notably excluded from administrative status under the Bankruptcy Code. See, e.g., In re Johnson, Case No. 06-10609 (Bankr. E.D. La., Aug. 28, 2008) at 3. Indeed, this exclusion is foundational to the underlying issues of bifurcation, as chapter 7 debtors' attorneys cannot be paid from estate assets. See Lamie v. United States Trustee, 540 U.S. 526, 536-37 (2004).

Garrison's representation of Soller, provided by FSF, is ethical. See ARPC 1.7, cmt [1] ("For specific Rules regarding certain concurrent conflicts of interest, see Rule 1.8")

The specifically applicable provision of the ARPC is satisfied in this case, and the UST's Motion to Disqualify must be denied. Rule 1.8(f) provides that:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
> (1) the client gives informed consent;
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
> (3) information relating to the representation of a client is protected as required by Rule 1.6.

ARPC 1.8(f). The comments to this provision of Rule 1.8 note that "[l]awyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part." Id. cmt. 11. The comment goes on to note that such a third person might be an "indemnitor (such as a liability insurance company)." Id. The comments note that lawyers entering into such an arrangement have duties to maintain independent judgment and to protect client confidences, id., but that "[s]ometimes, it will be sufficient for the lawyers to obtain the client's informed consent regarding the fact of the payment and the identity of the third-party payer." Id., cmt. 12. In other instances (such as representation of co-parties, etc.), compliance with the more general rules about conflicts of interest and confidentiality may be required.

Here, Soller is an experienced attorney and is receiving Garrison's and his firm's services pursuant to the Defense Guaranty & Indemnity contained in the Finance Agreement that Soller chose to enter into with FSF. He is receiving what he bargained for, and he is uniquely qualified as an experienced attorney to appreciate the implications of the conflict waivers that he has given for Garrison and his firm to represent him herein. There simply is nothing for the Court to concern itself with in this matter, and the UST's extraordinary (and baseless) request should be denied.

### D. Garrison's Approach to Representing Clients of FSF Like Soller Satisfies Rule 1.7's Requirements

The premise of the USTP's Motion to Disqualify is that it is *impossible* for Garrison and Soller to manage the potential for conflicts of interest and that this Court should disqualify Garrison from continuing the representation because it would offend the very integrity of the judicial process. Nothing could be further from the truth.

Rule 1.7 provides that

> (b) notwithstanding a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is no prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and,
> (4) each affected client gives informed consent, confirmed in writing.

ARPC 1.7(b). In other words, so long as the attorney can discharge their fiduciary duty to the affected client (and subject to limitations not applicable here), conflicts of the type that the USTP identifies under Rule 1.7(a) are *waivable* with informed, written consent.

As his Declaration makes clear, Mr. Garrison has represented over 40 attorneys in situations similar to the one faced by Soller here. He has taken appropriate steps to navigate the potential conflicts of interest inherent in his services being provided by FSF, a company that he owns. The resolution of various of those matters have involved accommodations and concessions by FSF to facilitate the attorney's desired outcomes. More specifically here, Soller is attesting to his awareness of the potential conflicts of interest and that his engagement agreement provides written confirmation of his informed consent.

As noted above, the relief sought by the USTP is truly extraordinary. For this Court to grant the motion, it would have to conclude that allowing Garrison to represent Soller in these proceedings is so ethically problematic that the Court should substitute its judgment for Soller's choice to retain Garrison, and that allowing Garrison to be counsel of record is so offensive as to taint the integrity of the Court and this process. That is utterly unsupportable.

### III.  CONCLUSION

Based upon the facts, and the points and authorities discussed above, Soller and Garrison urge the Court to deny the Motion to Disqualify. It seeks to relitigate issues that the USTP has raised and lost twice before. It involves truly extraordinary relief that this Court should rarely even consider. The relationship itself is a rather garden-variety insurance defense relationship that is allowed under Rule 1.8(f). Even under the more general provisions of Rule 1.7, appropriate steps have been and will continue to be taken to deal with potential conflicts, which are waivable and *have been waived*. This Court should not lightly consider substituting its own judgment for the informed consent of Soller—himself an experienced attorney—as to his selection of counsel.

RESPECTFULLY SUBMITTED this 10th day of November, 2021.

*/s/ Eric Soller*
Eric Soller
Soller Law Firm
P.O. Box 814
Charleston, AR 72933
Tel: (479) 883-1664
Fax: (479) 965-7784
esoller73@gmail.com

## CERTIFICATE OF MAILING

This is to certify, under penalty of perjury, that on November 10, 2021 the foregoing was e-mailed to those parties in interest set forth below.

Kathryn M.C. Worlow, Esq.
Trial Attorney
Office of the United States Trustee
200 West Capitol Ave., Suite 1200
Little Rock, AR 72201-3618
kathryn.m.worlow@usdoj.gov