UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| In re:<br>JUSTIN EISENART and<br>BRITTANY EISENHART,<br>　　　　Debtors. | Case No. 5:20-71965-R<br>Chapter 7<br>Hon. Bianca M. Rucker |
| In re:<br>ERIC SOLLER, | Misc. P. No. 5:21-mp-00702<br>Hon. Bianca M. Rucker |

## DECLARATION OF DANIEL E. GARRISON, ESQ.

Daniel E. Garrison declares as follows:

1.　　I am over the age of 18, and give the following testimony of my own free will, from personal knowledge, and under penalty of perjury.

2.　　I have been a licensed attorney since 1995 and am admitted to practice and in good standing in the states of Arizona (active) and Utah (currently inactive). I am also admitted to practice before a number of federal bankruptcy, district and appellate courts across the country.

3.　　I am a founder and principal of Fresh Start Funding, LLC ("FSF"), an Arizona limited liability company that commenced business in February 2018. I own a non-majority interest in FSF through a separate, wholly-owned limited liability company. My co-founder and co-principal of FSF is attorney Matthew R. Hartley. The remaining principal of FSF is David G. Loaney, who is a so-called "silent partner" and is not involved in the day-to-day operations of the business. Mr. Hartley and I share responsibility for all day-to-day management of FSF as Co-Chief Executive Officers.

4.　　FSF provides line-of-credit financing and payment management services to consumer attorneys across the United States. For consumer chapter 7 bankruptcy attorneys, FSF also provides the know-how, training, and best-practice forms for attorneys to legally and ethically

bifurcate their engagement agreements so that the attorneys can offer post-petition payment terms to their chapter 7 debtor clients.

5. FSF also offers consumer chapter 7 bankruptcy attorneys a defense guaranty and indemnity, pursuant to which if a chapter 7 debtor's attorney working with FSF has their bifurcation practice or their relationship with FSF challenged, FSF provides the attorney with representation in all aspects of the litigation.

6. When FSF's defense obligation is triggered, FSF arranges representation through Protego Law PLLC, an Arizona professional limited liability company owned and operated by myself and Mr. Hartley. With very infrequent exceptions where Protego represents attorneys engaged in bifurcation who are not FSF's clients, Protego's clients are customers of FSF.

7. In the roughly 23 years prior to starting FSF, I had a successful career in the private practice of law. I developed a niche practice representing chapter 11 debtors and handling complex commercial litigation matters. I have been honored to receive an AV® Preeminent™ rating from Martindale-Hubbell. I have been listed in Southwest Super Lawyers® for bankruptcy and restructuring, and have been named to Best Lawyers in America® for commercial litigation. In 2017, my work with two troubled hospitals was nationally recognized with the "Turnaround of the Year" award for middle-market ($50M to $200M) companies from the Turnaround Management Association, the largest international professional organization focusing on troubled businesses, and by M&A Advisor as the national "Healthcare Transaction of the Year." My work with a troubled sand and gravel operation had previously been recognized as TMA's Arizona "Turnaround of the Year" in 2007, and I was a finalist for that award again in 2013 for work with a distressed residential rental company.

8. Since co-founding FSF, I have had the opportunity to publish and speak nationally about chapter 7 bifurcation and related topics. In June 2018, the American Bankruptcy Institute published my article "Liberating Debtors from the Sweatbox: Bifurcation in Consumer Chapter 7 Cases" in its *ABI Journal*. My article "There's No Such Thing as Too Much Information: Disclosure of Bifurcation and Financing in Chapter 7 Cases" was published in the July 2019 issue of the *ABI Journal*, and later selected for reprint in the *Best of ABI 2019: The Year in Consumer Bankruptcy*. I have spoken to bar associations and attorney groups in several states about these same topics in the last three years.

9. In the roughly three years since FSF began offering the defense guaranty to chapter 7 attorneys who work with FSF, I have represented over forty different attorneys in matters ranging from informal inquires by the United States Trustee Program ("USTP") to various motions and orders to show cause challenging the attorneys' bifurcation practice and/or relationship with FSF.

10. Throughout those engagements, I have been acutely sensitive to the potential for conflicts of interest, and have gone out my way to discuss these matters with my attorney clients. The resolution of these matters has often involved agreements requiring financial contribution by FSF, changes to FSF's forms and practices, and other situations where FSF was required to make concessions in order to comply with orders or agreements, or to facilitate the development of the agreements. In those situations, I had candid conversations with my attorney clients about their specific interests and then, clearly identifying the dual roles that I have as their counsel and as a principal of FSF, discussed FSF's perspectives on those same issues. This open conversation, with clear identification of roles and perspectives, has facilitated what I believe to universally have been informed consent by my attorney clients in their chosen course of defense. This has in no small part also been facilitated by the fact that my clients are, themselves, practicing attorneys with an

independent awareness of and sensitivity to conflicts of interest. In other situations, FSF's attorney clients have elected to litigate issues to a decision and, in a few instances, through to an appeal.

11. In very limited circumstances, I have had occasion to recommend that my attorney clients seek separate representation, and I have pivoted to a consulting role in the relationship.

12. From my perspective, FSF's provision of counsel to the company's attorney clients is no different than insurance-defended litigation in the broader legal world, a dynamic with which I have prior, personal experience. One significant difference here is that my clients are all practicing attorneys, which has made the discussion of the potentially divergent interests of FSF and its attorney clients significantly easier than a similar discussion with a non-attorney client.

13. Except in the situations where I have recommended separate counsel, both I and my attorney clients have concluded that FSF's and the attorneys' respective interests in the representation were consistent. Both parties were interested in vindicating the practice of bifurcation and/or the commercial relationship between FSF and its attorney clients. Both parties were interested in a quick and efficient resolution of the dispute.

14. Mr. Soller initially engaged me and my firm on or about January 11, 2021 pursuant to a written and signed engagement letter, the purpose of which was to have Garrison respond to the USTP's initial inquiry as described in paragraph 5 of and Exhibit 1 to the Motion to Disqualify. Mr. Soller re-engaged me and my firm on or about August 13, 2021 to respond to the Court's order and the USTP's motion filed in the above-captioned cases. Both engagement letters:

   a. Disclosed that the costs of my and my firm's services would be borne by FSF pursuant to the Defense Guaranty & Indemnity;

   b. Disclosed that I and other principals of the law firm were also owners of FSF;

c. Discussed the fact that FSF had advanced funds to Mr. Soller under the Finance Agreement and taken a lien against the fee receivable owed to Mr. Soller by his client; and,

d. Discussed the perceived alignment of FSF's interests with Mr. Soller's in this matter but advised that if the interests diverged it could create a conflict of interest that would necessitate withdrawal of me and my firm.

15. I have had conversations with the USTP's trial attorney assigned to this case, and the Assistant United States Trustee about my *pro hac vice* application and potential ways to avoid litigating the Motion to Disqualify. These efforts ultimately were unsuccessful. In one such conversation, we discussed—alternately—having me and Mr. Soller consent to the USTP contacting Mr. Soller despite his represented status, *or* revising the *pro hac vice* motion to request under the local rule that I be granted admission without the necessity of local counsel (obviating the USTP's McDade Act concern about the dilemma created by Soller being both a represented party *and* local counsel to Garrison). Ultimately, Mr. Soller filed an amended version of the *pro hac vice* motion that, among other things, requested that I be admitted without the need for separate local counsel—in part because Mr. Soller is separately receiving notice of and is obligated to attend and participate in events surrounding the disputes in this case as debtor's counsel.

RESPECTFULLY SUBMITTED this 10th day of November, 2021,

_____
Daniel E. Garrison
1805 N. Scottsdale Rd., Ste. 100
Tempe, AZ 85281
Tel: (480) 504-6800

## **CERTIFICATE OF MAILING**

This is to certify, under penalty of perjury, that on November 10, 2021 the foregoing was e-mailed to those parties in interest set forth below.

Kathryn M.C. Worlow, Esq.
Trial Attorney
Office of the United States Trustee
200 West Capitol Ave., Suite 1200
Little Rock, AR 72201-3618
kathryn.m.worlow@usdoj.gov